**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| ALDIN LEWIS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. CIV-24-1112-PRW |
| | ) | |
| WILAYAT HUSSAIN, et al., | ) | |
| | ) | |
| Defendants. | ) | |

# ORDER

Before the Court is Defendants Wilayat Hussain and Chandi 209 Trucking, Inc.'s Renewed Motion for Judgment as a Matter of Law or, in the Alternative, Motion for a New Trial (Dkt. 95). Plaintiff Aldin Lewis filed a response, and Defendants did not file a reply. For the reasons stated below, Defendants' Motion is **DENIED**.

## *Background*

This action arises from a motor-vehicle collision that occurred late at night on March 3, 2024, between Plaintiff Aldin Lewis and Defendant Wilayat Hussain. At the time, Hussain was operating a commercial semi-truck for Defendant Chandi 209 Trucking, Inc. ("Chandi"). The collision occurred when Lewis's vehicle struck the left rear portion of Hussain's truck while Hussain was making a right turn.

The principal liability dispute at trial was whether Hussain failed to stop and yield at a stop sign and, if so, whether that failure caused or contributed to the collision. The parties also disputed whether Lewis failed to perceive and react to the truck in time to avoid the collision.

Following trial, the jury returned a verdict for Lewis on his negligence and negligent-entrustment claims. The jury awarded Lewis $4.5 million in compensatory damages. After the punitive-damages phase of trial, the jury awarded an additional $3.5 million in punitive damages against Chandi.

Defendants now seek judgment as a matter of law under Federal Rule of Civil Procedure 50(b). Alternatively, they request a new trial under Rule 59.

***Legal Standard***

**A. Rule 50(b)**

Rule 50 of the Federal Rules of Civil Procedure permits a court to enter judgment as a matter of law when "a reasonable jury would not have a legally sufficient evidentiary basis" to find for a party on a particular issue.[1] After judgment, a party that timely moved under Rule 50(a) may renew the motion under Rule 50(b).[2]

A Rule 50(b) motion may not ordinarily assert a ground that was not raised with sufficient specificity in the Rule 50(a) motion.[3] The preservation requirement gives the opposing party an opportunity to cure any evidentiary deficiency before the case is submitted to the jury and permits the trial court to address the issue in the first instance.

---

[1] Fed. R. Civ. P. 50(a)(1).

[2] Here, Defendants made a Rule 50(a) motion at the close of Plaintiff's case-in-chief (summarily asking for judgment as a matter of law on the negligence and "all" claims, without making any specific argument or identifying any evidentiary deficiencies) (Trial Tr. (Dkt. 98-1), at 210:16-24), renewed the motion at the close of all evidence (but specifically as to the issue of whether Chandi acted with reckless disregard) (Trial Tr. (Dkt. 98-2), at 241:3-16), and again renewed the motion after judgment, in the present motion. This new motion, however, makes a variety of arguments never made in the trial motion.

[3] *Perez v. El Tequila, LLC*, 847 F.3d 1247, 1255 (10th Cir. 2017).

In reviewing a Rule 50(b) motion, the Court considers the evidence in the light most favorable to the nonmoving party and draws all reasonable inferences in that party's favor.[4] The Court does not weigh conflicting evidence, assess witness credibility, or substitute its judgment for that of the jury. Judgment as a matter of law is appropriate only when the evidence points in one direction and permits no reasonable inference supporting the verdict.[5]

**B. Rule 59**

Under Rule 59(a), the Court may grant a new trial after a jury trial "for any reason for which a new trial has heretofore been granted in an action at law in federal court."[6] These reasons include when the verdict is against the great weight of the evidence, when prejudicial error affected a party's substantial rights, or when the damages award is excessive under the governing law.[7] Although the Court considers the weight of the evidence when considering a Rule 59 motion, a new trial is not warranted merely because the Court might have reached a different result.[8] The remedy is reserved for circumstances in which the verdict is clearly unsupported by the evidence or allowing it to stand would result in a miscarriage of justice.

---

[4] *Liberty Mut. Fire Ins. Co. v. Woolman*, 913 F.3d 977, 983 (10th Cir. 2019).

[5] *In re Cox Enters., Inc.*, 871 F.3d 1093, 1096 (10th Cir. 2017).

[6] Fed. R. Civ. P. 59(a).

[7] *Osterhout v. Bd. of Cty. Cmm'rs. Of Leflore Cty., Okla.*, 10 F.4th 978, 988, 1001 (10th Cir. 2021) (citing *Henning v. Union Pac. R. Co.*, 530 F.3d 1206, 1217 (10th Cir. 2008)); *Turnbull v. Missouri Pac. R. Co.*, 1991 WL 544257, at *1 (W.D. Okla. Dec. 10, 1991) (citing *McHargue v. Stokes Div. of Pennwalt Corp.*, 912 F.2d 394, 396 (10th Cir. 1990)).

[8] *Turnbull*, 1991 WL 544257, at *1.

## *Discussion*

## I. Motion for Judgment as a Matter of Law

Defendants challenge: (1) the sufficiency of the evidence of causation; (2) the evidentiary basis for future damages; (3) the sufficiency of the negligent-entrustment evidence; and (4) the submission of punitive damages.

### A. Negligence and Causation

Under Oklahoma law, a negligence claim requires proof of a duty, a breach of that duty, and injury proximately caused by the breach.[9] Proximate cause is a cause that, in a natural and continuous sequence, produces the injury and without which the injury would not have occurred.[10] Defendants argue that Hussain's conduct was merely a condition surrounding the accident and that Lewis's delayed braking was the collision's proximate cause. They rely principally on evidence that Lewis did not apply his brakes until approximately one second before impact.[11]

The argument does not justify judgment as a matter of law. Lewis presented evidence that Hussain entered the roadway without stopping and yielding at the stop sign.[12] Lewis also presented evidence concerning the truck's position across the roadway, the visibility (or lack thereof) of the truck and its reflective markings, and the time at which

---

[9] *Dirickson v. Mings*, 910 P.2d 1015, 1017–18 (Okla. 1996).

[10] *Thur v. Dunkley*, 474 P.2d 403, 405–06 (Okla. 1970).

[11] Mot. (Dkt. 95), at 4.

[12] *See* Trial Tr. (Dkt. 98-1), at 129:16–25, 158:12–18.

Lewis reasonably could have perceived the obstruction.[13] Lewis's accident-reconstruction expert, Jason Riddle, testified that Lewis took evasive action after perceiving the truck and that Hussain's failure to stop and yield caused the collision.[14] Defendants characterize Riddle's testimony as an admission that Lewis caused the collision, but the record does not support that characterization. When asked whether he had concluded that Lewis acted improperly by failing to brake sooner, Riddle answered unequivocally that he had not:

> **Mr. Leverett:** At any point in this litigation have you ever said to anybody that Mr. Lewis did something wrong by not braking properly?
>
> **Mr. Riddle:** No, sir.
>
> **…**
>
> **Mr. Leverett:** Who caused this wreck?
>
> **Mr. Riddle:** Mr. Hussain by not stopping and yielding from the stop sign.[15]

Defendants never explain why this evidence wasn't sufficient to support the jury's verdict; they instead rely on their repeated (and mistaken) assertion that there was "uncontroverted" expert testimony that Lewis braked too late and caused the collision. In any event, evidence that Lewis possibly could have braked sooner doesn't compel a finding that Hussain's conduct was not a proximate cause. Oklahoma law permits an injury to have more than one proximate cause. At most, Defendants' evidence created a factual dispute

---

[13] *See id.* at 115:5–117:15.

[14] *See id.* at 117:4–15

[15] *Id.* at 157:15–18, 158:12–18.

regarding comparative negligence and the relative causal responsibility of the drivers. Resolving that dispute required the jury to weigh the competing reconstruction evidence and make credibility determinations that the Court may not revisit under Rule 50(b).

Viewed in Lewis's favor, the evidence permitted a reasonable jury to find that Hussain failed to stop and yield, that this failure placed the truck in Lewis's path, and that Hussain's conduct was a proximate cause of the collision. Defendants are not entitled to judgment as a matter of law on this ground.

**B. Future Damages**

Defendants next argue that Lewis failed to present expert medical testimony establishing future damages with reasonable certainty.

**1. Preservation**

Defendants did not raise this ground in their Rule 50(a) motion at trial.[16] The argument therefore was not preserved for renewal under Rule 50(b). On that basis alone, Defendants are not entitled to judgment as a matter of law on future damages.

**2. Alternative merits analysis**

Even if the argument had been preserved, it would not warrant judgment as a matter of law.

[16] *Id.* at 210:19–24 (summarily moving for judgment as matter of law on the negligence and "all" claims), Trial Tr. (Dkt. 98-1), at 241:3–5 (on punitive damages).

Oklahoma law generally requires future medical expenses, permanent injury, and future pain and suffering to be established with reasonable certainty.[17] When those matters depend on specialized medical knowledge, expert medical testimony is ordinarily required. A treating physician may offer such testimony when the opinions arise from the physician's treatment of the plaintiff and are properly disclosed under Federal Rule of Civil Procedure 26(a)(2)(C).[18]

Defendants first contend that Lewis failed to disclose his treating physicians, Dr. Justin Porter and Dr. Qualls E. Stevens, as expert witnesses. The record squarely refutes that contention. On December 1, 2025, Lewis identified both physicians as witnesses expected to offer opinion testimony under Rule 26(a)(2)(C).[19] The disclosures identified the subject matter of their anticipated testimony and summarized the facts and opinions on which they were expected to testify, including future medical expenses.[20] Defendants did not timely object to the disclosures or move to exclude the physicians' testimony on the ground that the disclosures failed to satisfy Rule 26.[21] Even now, Defendants do not explain how these disclosures failed to comply with Rule 26(a)(2)(C)'s requirements.

---

[17] *Godfrey v. Meyer*, 933 P.2d 942, 943 (Okla. Civ. App. 1996) (discussing *Reed v. Scott*, 820 P.2d 445, 449–50 (Okla. 1991)).

[18] *See Parker v. Delta Air Lines, Inc.*, 343 F.R.D. 224, 228 (D.N.M. 2022).

[19] Plf.'s Expert Witness List (Dkt. 18), at 2–4.

[20] *Id.*

[21] Defendants did not object to Plaintiff's expert witness list nor to the designations of deposition testimony for Dr. Porter and Dr. Stevens.

Proper disclosure, of course, is not itself proof of future damages. Defendants also summarily argue that the physicians' testimony at trial did not supply a legally sufficient evidentiary basis for jury's award of future damages. But at trial:

- Dr. Qualls Stevens, Lewis's neurosurgeon, testified that he recommended to Lewis cervical fusion surgery "to try to address the compression that was on his nerves and his spinal cord" and he opined that Lewis's symptoms would not resolve without that surgery. [22]

- Dr. Justin Porter, Lewis's interventional spine pain management specialist, testified that Lewis "will require additional future treatments as a result of his injuries," including "therapy, chiropractic adjustments, [and] probably some repeat injections" and also noted that surgery might become necessary.[23]

- Dr. Ashley Lastrapes, a life care planner and rehabilitation counselor, testified that based on the future treatments prescribed by Drs. Stevens and Porter, Lewis would in the future need anywhere from 10 to 40 epidural injections, at a cost between $42,970 and $255,600;[24] cervical fusion surgery and associated care, at a cost between $158,513.20 and $179,368.74;[25] physical therapy evaluations at a cost of $10,000;[26] physical therapy at a cost between $122,000 and $275,000;[27] regular diagnostic imaging at a cost between $20,000 and $74,000;[28] as well as equipment and supplies for at-home pain management.[29] Lastrapes opined that these future

[22] Designated Dep. of Qualls Stevens (Dkt. 81-3), at 21:6–23; 31:11–13.

[23] Designated Dep. of Justin Porter (Dkt. 81-2), at 43:3–19.

[24] Trial Tr. (Dkt. 98-1), at 173:11–174:2.

[25] *Id.* at 174:7–176:6.

[26] *Id.* at 178:4–18.

[27] *Id.* at 178:19–179:1.

[28] *Id.* at 179:2–22.

[29] *Id.* at 179:23–180:10.

> treatments would cost between $356,422.84 and $799,665.91.[30]

This testimony permitted the jury to find that Lewis would incur future medical expenses and experience future consequences from his injuries. Defendants do not identify any particular category of future damages that lacked supporting trial testimony. Nor do they argue that the physicians based their opinions on matters outside the scope of treatment, that the testimony was inadmissible under Federal Rule of Evidence 702, or that the anticipated costs were unsupported. Accordingly, the evidence, viewed in Lewis's favor, provided a legally sufficient basis for the future damages awarded by the jury.

### C. Negligent entrustment

Under Oklahoma law, "[n]egligent entrustment of an automobile occurs when the automobile is supplied . . . for the use of another whom the supplier knows, or should know, because of youth, inexperience, or otherwise, is likely to use it in a manner involving unreasonable risk of bodily harm to others, with liability for the harm caused thereby."[31] A plaintiff must show that (1) "a person who owns or has possession and control of an automobile allowed another driver to operate the automobile," (2) "the person knew or reasonably should have known that the other driver was careless, reckless and incompetent," and (3) "an injury was caused by the careless and reckless driving of the automobile."[32]

---

[30] *Id.* at 180:11–18.

[31] *Sheffer v. Carolina Forge Co.*, 306 P.3d 544, 548 (Okla. 2013).

[32] *Green v. Harris*, 70 P.3d 866, 871 (Okla. 2003).

The first element is undisputed. Chandi entrusted the commercial vehicle to Hussain for operation in the course of his work. As to the remaining elements, Lewis introduced evidence that, at the time Chandi permitted Hussain to operate the vehicle:

- Hussain had little experience operating a commercial semi-truck in the United States, having received his CDL just months prior and only after failing his first attempt to pass the driving test, and had driven a commercial semi-truck in the United States for only one month before being hired by Chandi;[33]

- Hussain's application to Chandi described Hussain as having no prior commercial driving experience;[34]

- Despite having been newly licensed and having told Chandi he had no prior commercial driving experience, Chandi did not provide Hussain with any training nor could Hussain recall Chandi having him perform any road test to evaluate his driving ability;[35]

- Hussain lacked knowledge of safety requirements material to operating the truck and had difficulty understanding English-language safety regulations and terminology;[36]

- Chandi's designated corporate representative and sole Chandi representative present at the trial, Robert Hoffman, testified to the importance of Chandi hiring only safe, qualified, and competent drivers and testified that Chandi thus requires all drivers to pass a driving test with one of its trainers before letting them begin driving. But he lacked personal knowledge as to whether Hussain ever took such a test and of the circumstances surrounding Hussain's vetting and hiring.[37]

---

[33] Hussain did not appear for trial, so his trial testimony came in the form of his videotaped deposition. The Court therefore cites to the transcript of that deposition. Designated Dep. of Wilayat Hussein (Dkt. 81-1), at 26:7–11; 22:2–9; 31:13–22.

[34] *Id.* at 45:7–46:5

[35] *Id.* at 49:21–50:10.

[36] *See, e.g.*, *id.* at 54:15–58:25.

[37] Trial Tr. (Dkt. 98-1), at 185:5–189:22; 202:19–203:23; 200:13–201:1; 203:25–204:2.

To be sure, limited English proficiency, immigration status, or lack of prior driving experience in the United States, standing alone, doesn't establish incompetence. The relevant issue is whether Chandi knew or should have known of a specific deficiency bearing on Hussain's ability to operate the commercial vehicle safely. Here, the evidence permitted the jury to find that Hussain lacked experience or demonstrated competence in complying with roadway safety requirements, including the obligation to stop and yield before entering a public roadway, particularly at night when visibility is reduced, and that Chandi placed him in control of a commercial vehicle without reasonably determining that he could operate it safely. The jury could further find that the same deficiency manifested itself when Hussain entered the roadway without stopping and yielding. The jury could further infer that Chandi's failure to adequately vet Hussain before putting him behind the wheel of their tractor trailer was unreasonable.

Defendants do not identify a particular element that they believe lacked evidentiary support. Instead, they rely primarily on *Schriner v. Gerard*,[38] in which the court dismissed a negligent-entrustment claim under Rule 12(b)(6) because the complaint contained no factual allegations showing that the owner knew of the driver's incompetence. But *Schriner* does not govern the sufficiency of the trial evidence here. This case proceeded beyond the pleadings, and Lewis introduced evidence from which the jury could evaluate both Hussain's qualifications and Chandi's knowledge. Defendants never explain why that evidence was legally insufficient.

[38] No. CIV-23-206-D, 2023 WL 3138026, at *3 (W.D. Okla. Apr. 27, 2023).

Viewed in Lewis's favor, the record permitted a reasonable jury to find each element of negligent entrustment. The Court therefore denies judgment as a matter of law on that claim.

**D. Punitive Damages**

Defendants contend that the punitive-damages award must be vacated because Lewis did not present sufficient evidence that Chandi acted with reckless disregard for the rights of others.

Under Oklahoma law, punitive damages may be submitted to the jury when the court finds competent evidence reasonably tending to show that the defendant acted with reckless disregard for the rights of others or engaged in intentional and malicious conduct.[39] The jury must then make the statutory predicate finding by clear and convincing evidence.

The Court thus instructed the jury that:

> Plaintiff Lewis has the burden of proving [reckless disregard] by clear and convincing evidence. By that I mean that you must be persuaded, considering all the evidence in the case, that the proposition on which the party has this burden of proof is highly probable and free from serious doubt.
>
> The conduct of Defendant Chandi 209 Trucking, Inc. was in reckless disregard of another's rights if Defendant Chandi 209 Trucking, Inc. was either aware, or did not care, that there was a substantial and unnecessary risk that its conduct would cause serious injury to others. In order for the conduct to be in reckless disregard of another's rights, it must have been unreasonable under the circumstances, and also there must have been a high probability that the conduct would cause serious harm to another person.[40]

---

[39] *See* 23 Okla. Stat. § 9.1.

[40] 1st Stage Jury Inst. (Dkt. 84), at 32.

Lewis argued that Chandi acted with reckless disregard. The question is therefore whether the evidence permitted the jury to find reckless disregard. Evidence supporting a finding of negligent entrustment does not automatically establish the more culpable state of mind required for punitive damages. But the jury here heard evidence from which it could find more than an inadvertent failure to exercise ordinary care. Specifically, Lewis presented evidence that:

- Chandi placed Hussain in control of a commercial semi-truck despite readily apparent deficiencies in his relevant experience, qualifications, or competence;

- Chandi failed to conduct or document a meaningful assessment of Hussain's ability to operate the truck safely, instead relying solely on his training by a third-party about which Chandi's corporate representative knew nothing;[41]

- Chandi failed to provide training to address the deficiencies, including failing to conduct or document a meaningful assessment of Hussain's ability to operate the truck safely;

- the risk created by entrusting a large commercial vehicle to an unqualified driver included catastrophic physical injury to other motorists; and

Taken together, and viewed in Lewis's favor, this evidence permitted a finding that Chandi was aware of a substantial and unnecessary risk to public safety and nevertheless permitted Hussain to operate the vehicle. The evidence therefore supplied a legally sufficient basis for the jury's clear-and-convincing finding of reckless disregard.

The Court therefore denies Defendants' Rule 50(b) motion in its entirety.

---

[41] Trial Tr. (Dkt. 98-1), at 203:18–205:2.

## II. Defendants' Rule 59 Motion[42]

Defendants alternatively seek a new trial on the grounds that: (1) the liability verdict was against the weight of the evidence; (2) references to Hussain's immigration status improperly prejudiced the jury; (3) the compensatory award was excessive; (4) the punitive award was excessive; and (5) the cumulative effect of the alleged errors, including the denial of remote testimony, deprived Defendants of a fair trial.

### A. Weight of the evidence on causation

Defendants again contend that Lewis's expert agreed Lewis caused the collision. As explained above, that characterization is not supported by the record. Riddle testified that Hussain's failure to stop and yield caused the collision, and he rejected the proposition that Lewis improperly failed to brake.

Defendants presented contrary evidence regarding reaction time, braking, visibility, and avoidability. The jury was entitled to consider that evidence, but it was not required to accept Defendants' interpretation of it. The conflicting evidence presented a factual dispute properly resolved by the jury.

Having independently reviewed the trial record, the Court does not find that the liability verdict was against the great weight of the evidence. A new trial is not warranted on this ground.

### B. References to Hussain's nationality and immigration status

[42] Defendants do not seek remittitur.

Defendants argue that Lewis repeatedly emphasized Hussain's immigration status and thereby invited the jury to decide the case on an improper basis. Defendants, however, do not identify any statement by Lewis's counsel that constituted an appeal to national-origin bias.

The references identified in the record occurred principally during portions of Hussain's deposition played at trial after Hussain did not appear in person. Defendants did not object to those deposition designations on the ground now asserted. Moreover, it was *defense* counsel who expressly discussed Hussain's immigration status during closing argument, stating, among other things, that Hussain was an immigrant who had lawfully entered the United States, contributed to the economy, and was proud to live in this country.[43]

Moreover, before trial the Court instructed counsel not to make an improper "us-versus-them" argument or otherwise invite the jury to decide the case based on nationality or immigration status,[44] and, again, Defendants do not identify a single instance of Lewis's counsel violating that admonition. The Court also instructed the jury that race, religion, national origin, and social status could not be considered in performing its duties.[45] Jurors are presumed to follow the Court's instructions absent evidence to the contrary.

After reviewing the record, the Court finds no improper appeal to national-origin bias by Lewis's counsel and no indication that references to immigration status affected

[43] Trial Tr. (Dkt. 98-2), at 273:23–274:9 (closing argument).

[44] Pretrial Order (Dkt. 76), at 2.

[45] 1st Stage Jury Inst. (Dkt. 84), at 5.

the verdict. To the extent any reference was made and was irrelevant, Defendants have not shown prejudice affecting their substantial rights. A new trial is not warranted on this ground.

**C. Compensatory Damages**

Defendants next argue that the $4.5 million compensatory award was excessive. Under Oklahoma law, a jury's damages award will not be set aside as excessive unless it is so unreasonable as to indicate that the jury acted from passion, prejudice, partiality, or corruption.[46] Because this is a diversity action, Oklahoma substantive law governs the measure and excessiveness of damages, while federal law governs the procedural mechanism for granting a new trial or remittitur.

Defendants focus on evidence of approximately $53,000 in past medical expenses and no more than $750,000 in projected future expenses,[47] and argue that the final damages award is "clearly unreasonable" without ever explaining how the damages award indicates that the jury acted out of passion, prejudice, partiality, or corruption. In any event, Defendants' focus on medical expenses does not account for all compensatory damages submitted to the jury.[48] Compensatory damages include not only economic losses but also

[46] *Nye v. BNSF Ry. Co.*, 428 P.3d 863, 878–79 (Okla. 2018) (quoting *Dodson v. Henderson Properties, Inc.*, 708 P.2d 1064, 1066 (Okla. 1985)); *see Century 21 Real Estate Corp. v. Meraj Int'l Inv. Corp.*, 315 F.3d 1271, 1281 (10th Cir.2003) ("In a diversity case … state law provides the appropriate rules of decision for the district court to determine whether the verdict was excessive.").

[47] Mot. (Dkt. 95), at 9.

[48] What's more, Defendants—not Plaintiff—proposed the general verdict form and therefore cannot rely on any alleged ambiguity as a basis for a new trial. Moreover,

proven pain and suffering, permanent impairment, and loss of the ability to engage in ordinary activities.

The jury heard evidence that Lewis sustained a cervical fracture and was required to wear a neck brace for approximately three months. He described significant pain, restricted movement, dependence on others for ordinary household activities, physical therapy, pain-management treatment, and the emotional effect of learning that he might require cervical fusion surgery.[49] The jury also heard evidence concerning future medical treatment, including spinal injections and cervical fusion surgery, which necessarily involves additional pain and suffering.

The compensatory award is substantial, particularly in comparison with the past medical expenses. But the Court's role is not to replace the jury's evaluation of noneconomic harm with its own merely because another amount might also have been reasonable. The nature of Lewis's injury, the evidence of ongoing pain and impairment, the anticipated future treatment, and the duration of the expected consequences provided a rational evidentiary basis for an award materially exceeding the amount of past medical expenses.

The Court has also reviewed the record for indications that the amount resulted from passion or prejudice. For the reasons discussed above, the Court finds no improper appeal

Defendants did not object to the Court's final verdict form, which required the jury to make only a single finding as to the total amount of compensatory damages.

[49] Trial Tr. (Dkt. 98), at 42:15–24, 45:4–12, 51:1–16.

to immigration or national-origin bias and no other prejudicial trial conduct that would explain the compensatory verdict.

Considering the evidence as a whole, the Court does not find that the $4.5 million award is so beyond the range of reason as to demonstrate passion, prejudice, partiality, or corruption. Defendants are therefore not entitled to a new trial or remittitur of the compensatory award.

**D. Punitive Damages**

Defendants argue that the $3.5 million punitive award is excessive under Oklahoma law and the Due Process Clause.

**1. Oklahoma statutory requirements**

The Court first considers whether the award complies with Oklahoma's punitive-damages statute. Under 23 Okla. Stat. § 9.1, a jury may award punitive damages under Category I after finding by clear and convincing evidence that the defendant acted with reckless disregard for the rights of others. A Category I award may not exceed the greater of $100,000 or the amount of actual damages awarded.

The jury made the required finding of reckless disregard, and the punitive-damages issue was tried in a separate phase. The $3.5 million punitive award is less than the $4.5 million compensatory award and therefore falls within the applicable statutory cap.

Oklahoma law also identifies factors relevant to the amount of punitive damages, including the seriousness of the public hazard, the defendant's awareness of the hazard, the number and level of employees involved, the profitability of the misconduct, and the defendant's financial condition.

The evidence permitted the jury to find that the conduct created a serious risk of physical injury to members of the motoring public and that Chandi's responsible personnel were aware of, or consciously disregarded, that risk. There was no evidence that the misconduct was profitable, repeated, or intentionally malicious. Those considerations limit the appropriate degree of punishment, but they do not render the award impermissible.

Chandi also argues that the award will destroy the company. Financial condition is relevant under Oklahoma law, but Chandi presented only limited evidence on that subject. It introduced evidence concerning the number of trucks it owned but did not provide a complete picture of its assets, liabilities, net worth, revenue, insurance, cash flow, or ability to satisfy the judgment. The evidence therefore did not require the jury—or permit the Court—to conclude that the award would necessarily bankrupt Chandi.

The award complies with § 9.1 and is not excessive under Oklahoma law.

**2. Constitutional review**

The Due Process Clause prohibits grossly excessive or arbitrary punitive-damages awards. In determining whether an award is constitutionally excessive, courts consider (1) the degree of reprehensibility of the defendant's conduct; (2) the ratio between punitive damages and the actual or potential harm suffered; and (3) the difference between the punitive award and civil penalties authorized or imposed in comparable cases. [50]

**a. Reprehensibility**

---

[50] *BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 574–75 (1996).

Reprehensibility is the most important guidepost. Relevant considerations include whether (1) the harm was physical rather than solely economic; (2) the conduct demonstrated indifference to or reckless disregard for health or safety; (3) the plaintiff was financially vulnerable; (4) the conduct was repeated rather than isolated; and (5) the harm resulted from intentional malice, trickery, or deceit rather than accident.

The first factor supports the award because Lewis suffered significant physical injury. The second factor also supports the award because the jury reasonably found that Chandi acted with reckless disregard for public safety.

The third factor has limited relevance because this case did not involve exploitation of Lewis's financial vulnerability. The fourth factor weighs against a substantial award because the record does not establish that Chandi repeatedly engaged in similar misconduct. The fifth factor also weighs against heightened reprehensibility because no evidence showed intentional malice, trickery, or deceit.

The evidence therefore establishes a meaningful, though not extreme, degree of reprehensibility. Chandi's conduct implicated physical safety and exposed motorists to the risk of serious injury, but it did not involve intentional harm, fraud, or proven repeated misconduct.

**b. Ratio**

The punitive-to-compensatory ratio is approximately 0.78 to 1. The punitive award is therefore lower than the compensatory award.

There is no fixed constitutional ratio applicable in every case. When compensatory damages are substantial, however, a punitive award equal to or less than the compensatory

award is more likely to satisfy due process, particularly when the misconduct caused physical injury and implicated public safety. The ratio here weighs strongly against a finding of constitutional excessiveness.

**c. Comparable civil penalties**

Neither party meaningfully identifies a comparable statutory civil penalty. The Court therefore treats this guidepost as either neutral or modestly favorable to Defendants. It does not, however, outweigh the physical nature of the harm, the jury's supported finding of reckless disregard, and the less-than-one-to-one ratio.

Considering all three guideposts, the Court concludes that the $3.5 million punitive award is not grossly excessive or arbitrary. Defendants are not entitled to a new trial on this ground.

**E. Remote testimony and cumulative error**

Defendants finally argue that the cumulative effect of the alleged errors deprived them of a fair trial. They include in this argument the Court's denial of their request to permit Hussain to testify by video or telephone.

Federal Rule of Civil Procedure 43(a) permits contemporaneous transmission of testimony from another location only upon a showing of good cause in compelling circumstances and with appropriate safeguards. The Court placed this case on its March 2026 trial docket in January 2026. At the March 13, 2026 pretrial conference, the Court directed Defendants to make every reasonable effort to secure Hussain's attendance. Defendants nevertheless waited until the eve of trial to request that Hussain testify remotely.

Defendants did not establish that Hussain's inability to attend arose from unforeseen and compelling circumstances. They also did not propose adequate safeguards for such remote testimony. The Court therefore acted within its discretion in denying the request under Rule 43(a). Hussain's deposition testimony remained available and was presented to the jury. Defendants have not shown that the use of the deposition, rather than live remote testimony, substantially prejudiced their defense.

Cumulative error requires multiple actual errors whose combined effect deprived the moving party of a fair trial. The Court has found no individual prejudicial error. Even considering the challenged rulings and statements collectively, Defendants have not shown that their combined effect affected the verdict or Defendants' substantial rights.

A new trial is therefore not warranted on cumulative-error grounds.

***Conclusion***

For these reasons, The Court **DENIES** Defendants' Renewed Motion for Judgment as a Matter of Law, and Alternative Motion for New Trial (Dkt. 95).

**IT IS SO ORDERED** this 31st day of August 2026.

PATRICK R. WYRICK
UNITED STATES DISTRICT JUDGE